UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 24 CR 271 |
| v. | |
| KIRK BRIDGES | Judge Manish S. Shah |

## GOVERNMENT'S SENTENCING MEMORANDUM

On March 14, 2024, in a residential housing development, defendant Kirk Bridges was selling cocaine and carrying a loaded handgun with a high-capacity drum magazine attached. Defendant fled from officers when they approached him and threw the gun on the roof of a residential building with no concern for who might get hurt. Defendant was dealing drugs with a gun in hand despite having several previous felony convictions, including multiple drug distribution and gun convictions. Given defendant's criminal history and inability to be deterred, a sentence on the lower end of the Guidelines range is warranted and sufficient, but not greater than necessary, upon consideration of the relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

I.      **Background**

On May 29, 2024, the grand jury returned an indictment charging the defendant, Kirk Bridges, with one count of being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), one count of possessing cocaine with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1), and one count of possessing a firearm in furtherance of a drug trafficking

crime, in violation of Title 18, United States Code, Section 924(c). Dkt. 1. On April 23, 2025, pursuant to a plea agreement, defendant pleaded guilty to the indictment. Dkt. 32. Defendant is scheduled to be sentenced by this Court on August 7, 2025, at 1:30 p.m. Dkt. 32.

## II.     Offense Calculation and Guidelines Range

### A.     PSR Calculation of Offense Level

The government agrees with the U.S. Department of Probation that, pursuant to the November 2024 Sentencing Guidelines Manual, Count One and the Stipulated Offense group. The government also agrees that defendant's offense level is 26 because the gun had a high-capacity magazine, defendant's prior conviction for manufacture and delivery of heroin (11-CR-16026) is a qualifying controlled substance offense, and defendant's prior conviction for felony domestic battery (79D05- 0907-FD-000370) is a qualifying crime of violence because defendant knowingly touched his partner in a way that resulted in bodily injury. *See United States v. Jennings*, 860 F.3d 450, 457–58 (7th Cir. 2017) (holding that Minnesota felony domestic assault constitutes a crime of violence where the statute defined bodily harm to include "physical pain or injury, illness, or any impairment of physical condition"); *Yates v. United States*, 842 F.3d 1051, 1053 (7th Cir. 2016) (concluding that Wisconsin criminal statute proscribing the intentional infliction of bodily harm—defined to mean physical pain or injury, illness, or any impairment of physical condition—was crime of violence"). The government also agrees that defendant has a criminal history category of VI. Accordingly, the government agrees with Probation that defendant

has an offense level, with acceptance of responsibility, of 23, resulting in a sentencing guideline range of 92 to 115 months' incarceration, in addition to the mandatory minimum 60 months pursuant to Count Three. PSR ¶ 133.

## B. Recommended Conditions of Supervised Release

Given the circumstances of the offense and all the factors set forth in Title 18, United States Code, Section 3553(a), the government recommends that the Court impose the maximum period of supervised release of five years. *See* PSR ¶ 136. Defendant's criminal history weighs in favor of a lengthy period of supervision to ensure he does not recidivate.

The mandatory, discretionary, and special conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on pages 32 through 38 of the PSR. The government agrees with the conditions proposed in the PSR and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (1), (4), (6), (8), and special condition (3) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and assisting the defendant in reintegrating into society upon his release. The government further agrees that discretionary conditions (7), (9), (14), (15), (16), (17), and (18) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed. Special condition (24) is also appropriate. The requirement that Probation have reasonable suspicion of a violation of the conditions of supervision appropriately limits Probation's ability to conduct such a search.

### III.    The §3553(a) Factors Support Imposition of a Guidelines Sentence

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The "Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities.").

The Guidelines range is significant here, but defendant's crime is serious, and his criminal history shows a repeated inability to reform or follow the law. For the foregoing reasons, the government respectfully submits that a sentence on the lower end of the Guidelines range is warranted in this case and most appropriately reflects the nature and circumstances of defendant's offense, defendant's history and characteristics, the need to afford adequate deterrence, and promote respect for the law.

### A.    The Nature and Circumstances of Defendant's Crime

Defendant possessed a loaded gun, with a high-capacity magazine attached, while selling cocaine in a residential housing complex. The circumstances of defendant's crime demonstrate the danger that guns pose in Chicago and defendant's disregard for societal norms and the law.

On the night of March 14, 2024, defendant was walking around the Trumbull Park Homes, a dense residential housing complex on the far south side of Chicago. In

his pocket, he had 38 individually wrapped baggies of cocaine, ready for distribution. In his hand, he had a loaded Glock handgun with a high-capacity drum magazine attached. Inside the magazine were 43 additional rounds of ammunition. When defendant saw police officers, he took off running. While running, he threw the loaded gun up in the air. It landed on the roof of an occupied residential building, and luckily, did not discharge upon landing. Below is a screenshot of the gun with the large drum magazine on top of the residential building:



After throwing the gun, defendant kept on running as officers pursued him. They eventually detained him in front of a different residential building. As he was being handcuffed and transported to a police vehicle, defendant dropped the baggie full of cocaine on the ground and tried to step on it.

Selling drugs in a residential neighborhood is dangerous. Carrying a loaded gun in a residential neighborhood is dangerous. Running from police is dangerous. Doing all those things at once, with a gun that is not only loaded but filled with enough ammunition to hurt several people, is extremely dangerous and reckless. It

is a serious offense that shows a disregard for human life and societal norms.

Based on the seriousness of the offense, a sentence within the Guidelines range is warranted in this case.

**B.    History and Characteristics of Defendant**

Defendant is 39 years old and has lived in the Chicago area for most of his life. PSR ¶¶ 91-100. Defendant had a very difficult childhood. Both his parents were absent, and he was raised by his grandmother in an impoverished environment. PSR ¶¶ 92-96. Defendant spent formative years in a juvenile detention center where he was abused, and then as a teenager, he was traumatized by the death of a friend. PSR ¶¶ 95-96. Defendant's childhood certainly impacted his opportunities in life and caused trauma that may have contributed to the bad choices he has made. This background provides some mitigation that warrants a sentence on the lower end of the Guidelines range.

But any mitigation from defendant's childhood is limited because since he was very young, defendant has repeatedly committed drug and violent crimes, including against his loved ones. When defendant was only 16, he was convicted of aggravated battery for committing a carjacking in which he and others beat the victim with bats and stole the victim's car. PSR ¶ 51. Defendant was convicted of his first gun crime in 2005 and his first drug crime in 2007. PSR ¶ 54. In 2008 and 2009, defendant was convicted of two separate domestic battery offenses, both committed against his child's mother and one of which occurred in front of the two-month-old child. PSR ¶

54, 56. In 2008, defendant was also convicted of battery against a prison guard. PSR ¶ 59.

Defendant did not age out of criminal behavior as he entered adulthood. In 2011, at the age of 25, officers executed a search warrant at his home and found ammunition and cocaine. PSR ¶ 61. He was convicted of distribution of cocaine but served less than a year in prison. *Id.* Then, in 2012, while on parole, defendant was arrested with a gun after resisting arrest. He was convicted of being an armed habitual criminal and sentenced to 7 years in prison. PSR ¶ 63. He spent five years in prison, but it did not deter him. In 2020, he had a drug conviction in which he threw a bag of heroin and cocaine on a roof while fleeing from police and a gun conviction in which he tossed a gun with a 30-round magazine. He was paroled in May 2022, and then arrested in this case while still on parole.

In sum, from a young age, defendant has consistently run afoul of the law. Repeated arrests and prison terms of up to 5 years have not deterred him from continuing to deal drugs, run from police, use violence against women, and carry guns illegally well into his 30s. Defendant's criminal history demonstrates the danger of him possessing guns. A significant sentence in the Guidelines range is warranted.

C. **The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law**

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider).

First, and foremost, a Guidelines sentence would protect the community. As

established in the sections above, defendant has a history of violent conduct, carried a gun with a drum magazine, and was dealing cocaine in a residential neighborhood. Defendant's actions pose a danger to the community, and a meaningful sentence will prevent defendant from carrying firearms around Chicago's neighborhoods and dealing drugs.

A sentence in the Guidelines would also provide specific deterrence. To date, defendant has not been deterred by his uninterrupted arrests and convictions, including his previous state court prison term of 5 years. A meaningful federal sentence here would send a message to defendant that he cannot continue with these dangerous criminal actions. General deterrence is also important. As defendant's criminal history shows, short state court prison sentences and early paroles simply do not deter criminal behavior. A sentence in the Guidelines is necessary to make clear that when a person carries a loaded gun with a high-capacity magazine and deals drugs, his conduct will not be tolerated by the federal courts.

## VI.    CONCLUSION

For the reasons set forth above, and in consideration of the factors enumerated under 18 U.S.C. § 3553(a), the government respectfully requests a sentence on the lower end of the Guidelines range followed by five years of post-release supervision.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:    */s/ Elie Zenner*
ELIE ZENNER
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

Dated: July 30, 2025